**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

KELLY McLEAN, on behalf of herself           Case No. _____
and all others similarly situated,

                          Plaintiff,

                                                  **CLASS ACTION COMPLAINT**
         -v.-                                     **& DEMAND FOR JURY TRIAL**

DANSKO, LLC,

                          Defendant.
------------------------------------------------------------------x

Plaintiff **KELLY McLEAN** ("Plaintiff" or "Ms. McLean"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this action against DANSKO, LLC ("Dansko" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.dansko.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1.      Plaintiff Kelly McLean is a resident of Bronx County and is permanently disabled due to Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that causes progressive loss of retinal function and severe decline in visual acuity. Her treating optometrist at Bronx Eye Associates confirms that Ms. McLean now has "only minimal residual perception of light and shapes" and is "almost completely blind," with constricted visual fields, impaired night vision, and profound functional sight loss. Her condition is permanent, irreversible, and progressive, and there are currently no curative treatments available for Bietti's Crystalline Dystrophy.  Exhibit A

2.      As a legally blind individual, Ms. McLean relies exclusively on screen-reading software and keyboard navigation to access digital content independently. Because she cannot visually interpret website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader-compatible navigation. For Ms. McLean, accessible coding is not optional—it is the only means by which she can access the internet.

3.      In 2026, Ms. McLean sought to independently browse and purchase supportive comfort footwear suitable for her needs as a severely visually impaired individual. Due to her near-total blindness, she requires stable, slip-resistant, supportive shoes to safely navigate her environment. She specifically attempted to research and purchase Dansko's Women's Rowan Red Leather Mary Jane Sandal ($140.00) and Women's XP 2.0 Rose Patent Clog ($170.00)—products marketed for their premium comfort, arch support, and orthopedic-grade stability. These models appear prominently throughout Dansko's product catalog and were among the pages she attempted to access.

4.      According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5.      The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites

is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6.      Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7.      The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8.      Plaintiff brings this civil action against Dansko, LLC, the operator of www.dansko.com, for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website— and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

9.      On January 22, 2026, February 14, 2026, and April 9, 2026, Plaintiff

attempted to access Defendant's Website using screen-reader technology to research and purchase the Women's Rowan Red Leather Mary Jane Sandal and Women's XP 2.0 Rose Patent Clog. She attempted to review product descriptions, sizing information, support features, and available colorways before completing a purchase.

10.    Despite multiple attempts across these three dates, Plaintiff was unable to independently complete her objectives due to pervasive access barriers. WAVE (Web Accessibility Evaluation Tool) audits of the Website's product pages revealed 15 Errors per page, including 2 missing alternative text instances, 7 missing form labels, and 6 empty links, as well as 4 Contrast Errors on the Rowan page and 8 Contrast Errors on the XP 2.0 page—together with 69 and 70 Alerts respectively—confirming systemic inaccessibility across both product pages Plaintiff attempted to access.  Exhibit B

11.    The accessibility barriers were systemic and not limited to isolated pages. The WAVE reports documented failures across product images, size and color selectors, filter controls, navigation menus, and interactive elements, confirming that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered.

12.    Defendant operates a retail ecommerce platform through which consumers can browse footwear, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its advertised selection of premium comfort and orthopedic footwear, which she needs due to her profound visual impairment and her daily need for stable, supportive, slip-resistant shoes.

13.    Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.dansko.com becomes and

remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

15.     This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

16.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County, accessed Defendant's Website, www.dansko.com, from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. See, *Velazquez v. Don Roberto Jewelers, Inc.,* No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

17.     Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, www.dansko.com, which allows users to browse inventory, review product information, select sizes and colorways, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives

substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

18.    The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

19.    This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

20.    Plaintiff Kelly McLean is, and at all relevant times was, a resident of Bronx County, New York. Ms. McLean is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist at Bronx Eye Associates, Ms. McLean has been diagnosed with Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that has caused progressive retinal deterioration, constricted visual fields, impaired night vision, and "severe reduction in functional sight." Her provider further confirms that Ms. McLean is now "almost completely blind, with only minimal residual perception of light and shapes," and that her condition is permanent,

irreversible, and progressive.

21.    Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. McLean depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

22.    For Ms. McLean, accessible online shopping is essential to her independence. As a legally blind consumer, she cannot visually browse retail stores or product displays without assistance. She therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase products suitable for her mobility and safety needs. This includes supportive, slip-resistant, comfort footwear, which she requires due to her profound visual impairment and the heightened risk of falls associated with her condition. When websites lack proper alternative text, labeled controls, or navigable structure, Ms. McLean is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

23.    Upon information and belief, Dansko, LLC is a foreign limited liability company organized under the laws of the State of Delaware and registered to do business in the Commonwealth of Pennsylvania, bearing Entity Number 3849466, with its principal place of business located at 33 Federal Road, West Grove, Pennsylvania 19390. Defendant owns, operates, and controls the commercial retail ecommerce Website www.dansko.com (the "Website"), through which it markets, displays, and sells footwear and related products to consumers throughout the United States, including residents of New York. Defendant derives substantial revenue from interstate commerce and transacts business within this

District by offering its products for direct online purchase and shipment to New York consumers.

## STATEMENT OF FACTS

Plaintiff's Attempts to Access Defendant's Website

24.     On January 22, 2026, February 14, 2026, and April 9, 2026, Plaintiff Kelly McLean attempted on three separate occasions to access Defendant's retail ecommerce Website, www.dansko.com, using the NVDA screen reader on her home computer in Bronx County. Because Ms. McLean is "almost completely blind, with only minimal residual perception of light and shapes," she cannot visually browse physical retail stores, examine products on shelves, or evaluate footwear in person. As a result, she relies entirely on accessible ecommerce websites to research, compare, and purchase footwear independently. Plaintiff visited Defendant's Website for the specific purpose of evaluating premium comfort footwear suitable for her daily mobility needs but was unable to do so due to pervasive accessibility barriers.

25.     Plaintiff specifically attempted to research two products: Dansko's Women's Rowan Red Leather Mary Jane Sandal ($140.00) and Women's XP 2.0 Rose Patent Clog ($170.00). As a blind pedestrian, Ms. McLean must rely on her sense of touch, balance, and proprioception when walking, navigating sidewalks, crossing streets, and traveling through unfamiliar environments. Because she cannot visually detect cracks, dips, uneven pavement, or obstacles in her path, she requires footwear that provides dependable traction, cushioning, and stability to reduce the risk of tripping or falling. The Rowan Red Leather Mary Jane Sandal—a perforated leather sandal with ankle strap rated 4.8 out of 5 stars by over 1,111 verified purchasers—appealed to Ms. McLean for its stable

strap closure, cushioned footbed, and arch support. The XP 2.0 Rose Patent Clog—rated 4.4 out of 5 stars by over 3,592 verified purchasers and marketed for its exceptional comfort, support, and durability on one's feet for extended periods—appealed to Ms. McLean because the enclosed clog design and sturdy construction provide the structural stability she requires as a nearly-blind pedestrian navigating her daily environment. For Ms. McLean, selecting appropriate footwear is directly tied to her safety, mobility, and independence. She therefore attempted to evaluate these products online; however, as a blind consumer who cannot visually inspect shoes in physical stores, she depends entirely on accessible website content to understand product features, materials, support level, and suitability for daily ambulation.

26.     Plaintiff attempted to review product names, descriptions, support features, available colors, pricing, and shipping information. She also attempted to use the Website's interactive controls—including size selectors, width selectors, and color option buttons— to evaluate each product's full range of options. However, the WAVE Accessibility Reports identified missing alternative text, missing form labels, empty links, orphaned form labels, broken ARIA references, very low contrast text, suspicious and redundant link text, and very small text across the very pages Plaintiff attempted to access. These defects created concrete barriers for Plaintiff, including:

- Product images announced only as "image," with no descriptive alt text, preventing Plaintiff from identifying shoe style, color, material, or features.

- Color, size, and width selector controls that NVDA could not identify or operate due to missing form labels, making it impossible to evaluate available options or make a selection.

- Six empty links per page that caused NVDA's focus to land on links with no name or context, disorienting Plaintiff and disrupting her ability to navigate the page structure.

- Orphaned form labels rendered visually but not programmatically associated with any control, causing NVDA to announce labels without a corresponding input, confusing Plaintiff's understanding of the page layout.

- Malformed and broken ARIA references in the header navigation that disrupted the global structure of the Website and prevented Plaintiff from forming a coherent mental map of www.dansko.com.

- Very low contrast text—four instances on the Rowan page and eight instances on the XP 2.0 page—rendering interactive elements and informational text visually inaccessible even to users with partial sight.

- Twenty-four redundant links per page that caused NVDA to repeat the same link announcements, disorienting Plaintiff and making it impossible to distinguish unique navigational options.

27.     As a result, Plaintiff could not reliably navigate the product pages, evaluate the products' features and options, or select any item for further review or purchase.

28.     Plaintiff also attempted to access additional areas of the Website— including Defendant's women's footwear category pages, comfort footwear collections, and general navigation—because these pages contained overlapping listings and similar interactive components. The WAVE reports documented the same categories of failures— missing alternative text, missing form labels, empty links, orphaned form labels, broken ARIA attributes, contrast failures, and redundant links—across these pages as well. These

failures caused NVDA to read interactive elements as "button," "link," or "blank," without context, preventing Plaintiff from identifying, comparing, or navigating to products.

29.    On each of the three dates, Plaintiff attempted to evaluate the Rowan Red Leather Mary Jane Sandal and the XP 2.0 Rose Patent Clog to determine whether they met her mobility and safety needs. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same information available to sighted users and could not complete a purchase.

Systemic Barriers Confirmed by WAVE

30.    Plaintiff's counsel conducted an automated accessibility audit of www.dansko.com using the WAVE Web Accessibility Evaluation Tool, a widely recognized industry-standard automated scanner developed by WebAIM. The audit evaluated the Website's product pages, navigation menus, and interactive components, including the specific pages Plaintiff attempted to access. The resulting WAVE reports identified 15 Errors on the Rowan Red Leather Mary Jane Sandal product page and 15 Errors on the XP 2.0 Rose Patent Clog product page, together with 4 Contrast Errors on the Rowan page and 8 Contrast Errors on the XP 2.0 page, and 69 Alerts on the Rowan page and 70 Alerts on the XP 2.0 page. Both pages received an AIM Score of 6.6 out of 10, reflecting a failing accessibility threshold. These findings confirm that the barriers Plaintiff encountered were systemic, widespread, and present throughout the Website at the time of her attempts to access it.

31.    The combination of missing alternative text, unlabeled and orphaned form controls, broken ARIA references, improper heading structure, contrast failures, empty links, redundant links, and very small text prevents blind users from perceiving, navigating,

and interacting with the Website on equal terms with sighted users.

32.     Product images on both the Rowan and XP 2.0 pages were announced only as "image" or with no alternative text at all, depriving Plaintiff of any information about shoe style, colorway, material, strap configuration, or design features.

33.     The Rowan and XP 2.0 product pages each contained seven (7) missing form labels—controls associated with size selection, width selection, and color options that NVDA could not identify or announce with any context, rendering the entire product-configuration interface inaccessible to Plaintiff.

34.     Repeated empty links and orphaned form labels caused NVDA's focus to jump unpredictably, preventing Plaintiff from understanding the structure of each product page or how to interact with it.

35.     Skipped and improperly coded heading structure—combined with "possible headings" that were styled visually as headings but coded as plain text (11 instances on the Rowan page and 10 on the XP 2.0 page)—prevented Plaintiff from using NVDA's heading-navigation feature to orient herself within the page.

36.     Contrast errors and very small text made interactive and informational elements inaccessible even to users with partial functional sight, compounding the barriers experienced by Ms. McLean.

37.     Because of these barriers, Plaintiff could not reliably navigate the product pages, could not determine which products were suitable for her needs, and could not select any item for further review.

38.     Plaintiff also attempted to access Defendant's women's footwear category pages and other sections of the Website that contained overlapping navigation components

and similar product-listing interfaces. The WAVE reports documented missing alternative text, empty links, orphaned form labels, broken ARIA references, redundant links, contrast failures, and very small text across these pages as well. These failures created additional barriers:

- NVDA announced interactive elements as "button," "link," or "blank," without context.

- Product listings were read as a confusing sequence of unlabeled links and repeated text.

- Improperly coded heading structure caused NVDA to skip or repeat sections, making navigation unpredictable.

- Missing alternative text prevented Plaintiff from identifying product differences or selecting items for comparison.

39.    On each of the three dates, Plaintiff attempted to evaluate the Rowan Red Leather Mary Jane Sandal and the XP 2.0 Rose Patent Clog to determine which product best met her daily mobility, stability, and safety needs. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same information available to sighted users and could not complete a purchase.

40.    The WAVE reports confirm that the barriers Plaintiff encountered were not isolated to a single page but were systemic across the Website. The Rowan product page report identified 15 Errors, 4 Contrast Errors, and 69 Alerts, while the XP 2.0 product page report identified 15 Errors, 8 Contrast Errors, and 70 Alerts. Both pages received an AIM Score of 6.6 out of 10. These findings demonstrate that Defendant's Website is not designed, constructed, maintained, or operated in a manner compatible with screen-reader

technology.

Plaintiff's Concrete Injury and Intent to Return

41.    Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website for the specific purpose of purchasing comfort footwear necessary for her daily safety, mobility, and independence as a nearly-blind individual. Her shopping objectives were personal, directly tied to her disability, and connected to specific products she attempted to review.

42.    Plaintiff remains highly interested in purchasing footwear from Defendant and intends to return to the Website as soon as it is made accessible. Her intent to return is credible because:

- She continues to require stable, supportive, and slip-resistant comfort footwear for safe daily ambulation as a nearly-blind pedestrian, and the Dansko Rowan and XP 2.0 are the specific products she identified as meeting her functional needs.

- Defendant offers specific products—including the Rowan Red Leather Mary Jane Sandal and the XP 2.0 Rose Patent Clog—that Plaintiff has been unable to independently evaluate due to the Website's inaccessible coding.

- She has no alternative means of independently evaluating these products without an accessible Website, as she cannot visually browse physical retail locations.

- Plaintiff intends to use www.dansko.com to review and purchase additional styles from Defendant's women's comfort footwear collection, including

styles suited to different seasonal and weather conditions, once the Website is remediated.

- She has demonstrated a history of attempting to access the Website on multiple occasions for the purpose of making a purchase, confirming a genuine and continuing intent to return.

43. Defendant's ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendant has no policy or plan to ensure accessibility, and the barriers she encountered remain uncorrected.

44. Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

All legally blind individuals in the United States who have attempted to access www.dansko.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

46. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York who have attempted to access www.dansko.com and were denied equal access to the goods, services, and information offered thereon.

47.     The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its comfort footwear products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by the WAVE audits.

48.     Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;

- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;

- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;

- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and

- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

49.     Plaintiff's claims are typical of the claims of the Class and Subclass because

Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the WAVE reports.

50.    Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

51.    Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

52.    Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

## FIRST CAUSE OF ACTION
(Violations of the ADA, 42 U.S.C. § 12182 et seq.)

53.    Plaintiff Kelly McLean, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

55.     Defendant's Website, www.dansko.com,  is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

56.     Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

57.     Defendant's Website, www.dansko.com,  is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

58.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

59.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

60.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.dansko.com, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

61.    Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Upon information and belief,

Defendant has received prior notice of these accessibility failures through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

62.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**SECOND CAUSE OF ACTION**
(New York State Human Rights Law)
("NYSHRL")

63.    Plaintiff Kelly McLean, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

64.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendant.

65.    Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

66.    Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, www.dansko.com,  within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

67.    Plaintiff has visited the Website on a number of occasions and has

encountered barriers to her access that exist.

68.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

69.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

70.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the site known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

71.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or

denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

72.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

73.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2), and the discrimination continues to date.

74.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

75.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

76.    Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.    An actual controversy has arisen and now exists between the parties in that

Plaintiff contends, and is informed and believes Defendant denies, that Defendant's Website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered throughout the Website.

78.     A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
(Violation of New York State Civil Rights Law)
("NYCRL")

79.     Plaintiff Kelly McLean, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

81.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

82.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

83.    § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

84.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.dansko.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

85.    Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

86.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

87.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." Id.

88.    Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
(Violations of the New York City Human Rights Law)
("NYCHRL")

89.     Plaintiff Kelly McLean, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

90.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

91.     Defendant is subject to NYCHRL because it owns and operates the Website, www.dansko.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

92.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the goods and services integrated therein completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

93.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by

the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

94.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

- constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

- constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

- failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

95.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct and these violations are ongoing.

96.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

97.    Defendant's actions were intended to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

98.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as

well as punitive damages pursuant to § 8-502.

99.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

100.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
(Declaratory Relief)

101.    Plaintiff Kelly McLean, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

102.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

103.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;

B.  A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.dansko.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;

C.  A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;

D.  An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

E.  An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and

F.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated:  New York, New York
        May 28, 2026

Respectfully submitted,
JOSEPH & NORINSBERG LLC
By: /s/ Robert L. Schonfeld
ROBERT L. SCHONFELD
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com
Attorneys for Plaintiff and the Proposed Class